# EXHIBIT I

# CONSULTING AGREEMENT

This **Consulting Agreement** ("Agreement") is made and effective this 25th day of January 2019, by and between

**LaunchByte LLC,** a Delaware limited liability company ("Consultant")

And

**Chef Dazzer LLC,** a Delaware Limited Liability Company ("Company")

In consideration of the mutual promises contained in the Agreement, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

**1.    Duties and Responsibilities.**
Consultant shall provide the services (each, a "Deliverable," and collectively, the "Deliverables") from the date of signing, attached hereto as Exhibit A (1, 2, 3, etc.) and incorporated herein by this reference (collectively, "Exhibit(s)") and as more fully set forth in this Agreement. The Deliverables shall be delivered to Company as set forth in the Exhibit(s).

**2.    Ownership of Deliverables.**
A.    Consultant agrees that the development of the Deliverables is "work for hire" within the meaning of the Copyright Act of 1976, as amended from time to time, and that the Deliverables shall be the sole property of Company.  To the extent that a Deliverable is not a "work for hire," Consultant hereby assigns to Company, without further compensation, all of its right, title and interest in and to such Deliverable and any and all related patents, patent applications, copyrights, copyright applications, trademarks and trade names in the United States and elsewhere.  Consultant will keep and maintain adequate and current written records with respect to the Deliverables (in the form of notes, sketches, drawings and as may otherwise be specified by Company), which records shall be available to and remain the sole property of Company at all times.  Upon reasonable request, Consultant will sign all applications, assignments, instruments and papers and perform all acts reasonably necessary or desired by Company to assign the Deliverables fully and completely to Company and to enable Company, its successors, assigns

and nominees, to secure and enjoy the full and exclusive benefits and advantages of the Deliverables.

B.    Notwithstanding anything contained in this Agreement to the contrary, (i) any routines, methodologies, processes, libraries, tools or technologies created, adapted or used by Consultant in its business generally, including all associated intellectual property rights, (ii) any and all other intellectual property rights that Consultant created, licensed, or otherwise acquired by Consultant before entering into this Agreement or which were acquired or developed outside the scope of this Agreement, or (iii) any confidential or proprietary information of Consultant (items (i – iii) are collectively referred to as the "Development Tools"), shall be and remain the sole and exclusive property of Consultant, and Company shall have no interest in or claim to the Development Tools, except solely to the extent necessary to exercise its rights in the Deliverables. In addition, notwithstanding any provision of this Agreement to the contrary, Consultant shall be free to use any ideas, concepts, or know-how developed or acquired by Consultant during the performance of this Agreement to the extent obtained and retained by Consultant's personnel as impression and general learning. Subject to and limited by Company' intellectual property rights described in Section 2. A. above, nothing in this Agreement shall be construed to preclude Consultant from using the Development Tools for use with third parties for the benefit of Consultant.

C.    In addition to any other fees set forth in this Agreement, Company shall be required to purchase any applicable third party licenses for any third-party products that are necessary for Consultant to design and develop the Deliverables. Such third-party products may include, but are not limited to: marketing suites, stock imagery, advertising spend, influencer payouts, or any other copyrighted work which Consultant deems necessary to purchase on behalf of Company to design and develop the Deliverables. In the event of any such third-party product, Consultant shall obtain Company' prior written consent before incorporating such third-party product into the Deliverables.

3. **Compensation**

A. Company shall pay Consultant the amount as set forth in Exhibit A (1, 2, 3, etc.) as applicable.

B. Subject to Company' prior approval, Company will reimburse Consultant for all reasonable out-of-pocket expenses, including, but not limited to, air fare, lodging, meals and rental of automobiles incurred by Consultant during the development of the Deliverables on behalf of Company, if any of these activities are deemed necessary.

C. Except as set forth in an Exhibit, any payments hereunder will be due upon receipt of the Consultant's invoice. Quoted fees exclude sales taxes and VAT where applicable.

4. **Independent Contractor.**

Consultant is acting as an independent contractor with respect to the services provided to Company. Neither Consultant nor the employees of the Consultant performing services for Company will be considered employees or agents of Company. Company will not be responsible for Consultant's acts or the acts of Consultant's employees while performing services under this Agreement. Nothing contained in this Agreement shall be construed to imply a joint venture, business, partnership or principal-agent relationship between the parties, and neither party by virtue of this Agreement shall have any right, power or authority to act or create any obligation, express or implied, on behalf of the other party.

5. **Resource and Staff-Monitoring.**

A. Consultant will utilize employees and/or subcontractors capable of designing and implementing the Deliverables to be developed per this Agreement.   All work shall be performed in a professional and workmanlike manner.   Consultant shall arrange for such employees and/or subcontractors, if any, to execute and deliver any document or instrument reasonably requested by Company to reflect Company' ownership of the Deliverables or in connection with any application for patent or copyright.

B. Company shall have the right to reasonably observe and monitor all aspects of the performance by Consultant of its obligations hereunder and Consultant shall use reasonable efforts to facilitate such observation and monitoring.   Information, functions and operations of Consultant not directly related to its obligations hereunder shall not be subject to observation and monitoring.

6. **Confidentiality.**

A. Consultant acknowledges that all material and information supplied by Company which has or will come into Consultant's possession or knowledge of Consultant in connection with its performance hereunder, is to be considered Company' confidential and proprietary information (the "Confidential Information"). By way of illustration, but not as a limitation, Confidential Information includes trade secrets, processes, data, know-how, program codes, documentation, flowcharts, algorithms, marketing plans, forecasts, unpublished financial statements, budgets, licenses, prices, costs, and employee and customer lists. Consultant's undertakings and obligations under this Section will not apply, however, to any Confidential Information which: (i) is or becomes generally available to the public through no action on Consultant's part, (ii) is generally disclosed to third parties by Company without restriction on such third parties, (iii) was in Consultant's possession prior to disclosure by Company, (iv) was or is independently developed by Consultant with use of the Confidential Information, or (v) is approved for release by written authorization of Company.  Upon termination of this Agreement or at any other time upon request, Consultant will promptly destroy or deliver to Company all notes, memoranda, notebooks, drawings, records, reports, files, documented source codes and other documents (and all copies or reproductions of such materials) in its possession or under its control, whether prepared by Consultant or others, which contain Confidential Information. Notwithstanding the foregoing, Consultant may retain electronic copies of Confidential Information to the extent that (i) such information is stored on backup systems in connection with its customary practices for backup storage of electronic information generally and it is not practical to access and erase such information and (ii) such information remains subject to the terms and conditions of this Agreement and is not thereafter accessed or used in violation of this Agreement. Consultant acknowledges that Confidential Information is the sole property of Company. Consultant agrees to use best efforts to hold Confidential Information in the strictest confidence, not to make use of it other than for the performance of its obligations hereunder, to release it only to the Consultant's employees or contractors with a need to know such

information and not to release or disclose it to any other party. Consultant will notify Company in writing of any circumstances within its knowledge relating to any unauthorized possession, use, or knowledge of such Confidential Information.

B. Consultant agrees to keep the performance of its obligations hereunder strictly confidential and not to disclose any information to any third party or entity without the prior written permission of Company. In no event shall Consultant or any of its employees use Company as a reference in marketing Consultant's services to any third party or entity without Company' prior written permission.

C. Company unconditionally agrees that they will not make public any disparaging or derogatory remarks concerning the Consultant or their agents, affiliates, owners, or Investors, to any other person or entity. Company also agrees not to make, either directly or indirectly, or cause to be made, either directly or indirectly, any statements or comments, whether oral, written, electronic or otherwise, or to take any other action which intentionally disrupts or impairs the operations, business interests, contractual or business relations of the Consultant.

7. **Representations.**
Consultant represents and warrants that the Deliverables will not infringe upon any copyright, patent, trade secret or other intellectual property interest of any third party. Company represents and warrants that no material provided to Consultant in connection herewith will cause Consultant or the Deliverables to infringe upon any copyright, patent, trade secret or other intellectual property interest of any third party.

8. **Warranties, Limitations.**
A. **EXCEPT AS EXPRESSLY SET FORTH IN THIS AGREEMENT, (I) EACH DELIVERABLE IS PROVIDED AS IS AND AS AVAILABLE AND (II) TO THE MAXIMUM EXTENT PERMITTED BY LAW, CONSULTANT DISCLAIMS ANY AND ALL WARRANTIES WITH RESPECT TO EACH DELIVERABLE, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO IMPLIED WARRANTIES OF TITLE, NON-INFRINGEMENT,**

**MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE.**

B. **IN NO EVENT SHALL CONSULTANT BE LIABLE TO THE COMPANY, OR ANY THIRD PARTY, FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, PUNITIVE OR EXEMPLARY DAMAGES ARISING OUT OF OR RELATED TO THIS AGREEMENT (INCLUDING LOSS OF PROFITS, USE, DATA, OR OTHER ECONOMIC ADVANTAGE), HOWEVER CAUSED AND ON ANY THEORY OF LIABILITY INCLUDING NEGLIGENCE, AND EVEN IF CONSULTANT HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.**

C. **CONSULTANT'S AGGREGATE LIABILITY TO COMPANY (OR ANY THIRD PARTY) FOR ALL CLAIMS ARISING OUT OF OR RELATED TO THIS AGREEMENT WILL NOT EXCEED THE FEES ACTUALLY PAID TO CONSULTANT PURSUANT TO THIS AGREEMENT.**

9. **Delivery and Acceptance of Deliverables.**
A. Consultant will deliver the Deliverables to Company in accordance with the Exhibit(s).

B. Company will examine and test the Deliverables promptly upon delivery to determine whether the Deliverables conform to the Exhibit(s) and with the terms and conditions of this Agreement. Within the time specified in the Exhibit(s), Company will provide Consultant with a written statement that Company accepts the Deliverables or a written statement of errors setting forth in detail each specific instance in which the Deliverables do not conform to the Exhibit(s). Any Deliverable not accepted or rejected in the manner set forth in the immediately preceding sentence within the applicable time period will be deemed accepted. Within the time specified in the Exhibit(s), Consultant will either (i) correct each instance of nonconformance set forth in the statement of errors, (ii) notify Company that Consultant has determined that the Deliverable conforms to the Exhibit(s), setting forth in detail the basis for such determination or (iii) notify Company that Consultant does not have sufficient information or materials to determine whether the Deliverable conforms to the Exhibit(s) or to make any necessary changes or corrections, setting forth in detail the additional information or materials needed by Consultant.

**10.  Term and Termination.**

A.  This Agreement shall commence on the date set forth above and continue until all of the obligations of the parties have been performed or until earlier terminated as provided herein. The terms in this consulting agreement are valid for two (2) years from the date of signing, and shall renew for additional one (1) year terms unless written notice is provided.

B.  Consultant's appointment as Consultant pursuant to this Agreement and this Agreement shall terminate upon the occurrence of any of the following events:

(i) in the event either party defaults in any material obligation owed to the other party pursuant to this Agreement, then this Agreement may be terminated if the default is not cured following at least thirty (30) days written notice to the defaulting party, or

(ii) either party is bankrupt or insolvent, or bankruptcy or insolvency proceedings are instituted against a party and the proceeding is not dismissed within thirty (30) days after commencement.

C.  Section 2, Ownership of Deliverables, Section 7, Confidentiality, and Section 10, Warranties, Limitations, shall survive the expiration or termination of this Agreement.

**11.  Notices.**

Any notice required by this Agreement or given in connection with it, shall be in writing and shall be given to the appropriate party by personal delivery or a recognized overnight delivery service such as FedEx.

If to Consultant:  LaunchByte LLC
288 Newbury Street Suite 300
Boston, MA 02116

If to Company:  Chef Dazzer, LLC
512 E 8th Street
Boston, MA 02127

**12.  No Waiver.**

The waiver or failure of either party to exercise in any respect any right provided in this agreement shall not be deemed a waiver of any other right or remedy to which the party may be entitled.

**13.  Entirety of Agreement.**

The terms and conditions set forth herein constitute the entire agreement between the parties and supersede any communications or previous agreements with respect to the subject matter of this Agreement.  There are no written or oral understandings directly or indirectly related to this Agreement that are not set forth herein.  No change can be made to this Agreement other than in writing and signed by both parties.

**14.  Governing Law.**

This Agreement shall be construed and enforced according to the laws of the State of Delaware and any dispute under this Agreement must be brought in this venue and no other.

**15.  Headings in this Agreement.**

The headings in this Agreement are for convenience only, confirm no rights or obligations in either party, and do not alter any terms of this Agreement.

**16.  Severability.**

If any term of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable, then this Agreement, including all of the remaining terms, will remain in full force and effect as if such invalid or unenforceable term had never been included.

IN WITNESS, WHEREOF, the parties have executed this Marketing Consultancy Agreement as of the date written below.

LaunchByte LLC

By: _____
Name: Tan Kabra
Title: Manager
Date: _____

COMPANY:

Chef Dazzer, LLC

_____
Name: Michael Cormier
Title: Chief Executive Officer
Date: _____

4

**Exhibit A-1**

The following project will be incorporated into Consulting Agreement between Chef Dazzer, LLC ("Company") and LaunchByte LLC ("Consultant"), originally dated January 25, 2019. All other terms and conditions will remain in full force for the contract period and any extension thereof.

### A.  Objective and Scope of Project

The objective and scope of the project, under this Exhibit, is to provide software development support for the MVP (Minimum Viable Product) under the guidance of an authorized Company Project Manager. The project effort will be focused on creating the following deliverables:

**Phase 1** --------------------------
Deliverables *(~ 8 weeks)*

- Landing Page – Company to provide copy
- Investor Deck – Company to provide copy & financial projections
- UI/UX dynamic prototype (iPhone)
- Project Plan for Phase 2 MVP development, based on effort allowance outlined below – to be executed and agreed upon as set deliverables for Phase 2***

**Phase 2** --------------------------
Deliverables *(~ 16 weeks)*

- Completed platform (mobile and/or web) as per Phase 1 Project Plan (six feature functionality)
- Back End + Database set up

   *** *Company may not request changes to be made to the MVP once the Project Plan for Phase 2 has been executed, to allow for a successful launch of the product / company. If Company require such a change, any such changes shall be agreed upon in writing to the extent additional time or expense is required.*

**Phase 3** --------------------------
Deliverables *(~ 12 weeks)*, ongoing over Phase 1 and 2, to be delivered on as needed basis

**Accounting and Reporting**
- Accounting Systems and Software
  - Select and implement the base accounting system
  - Deploy basic accounting capabilities (chart of accounts, deferred revenues, proper categorization of Income Statement and Balance Sheet)
  - Enhance and improve accounting system as the company grows and requires more sophisticated reporting and analyses
  - Ensure all Application Programming Interfaces (APIs) are working properly between the accounting system and auxiliary or external functions (banking, credit cards, payroll etc)
- Accounting, regulatory, Generally Accepted Accounting Prinicipals (GAAP) reporting
  - Ensure accounts are GAAP compliant where required and appropriate
  - Work with CPA firm to facilitate taxes
- Financial Reporting
  - Establish and prepare monthly financial package for management and board
  - Produce monthly financial statements
- Investor Relations
  - Establish investor communications
  - Create/assist with board of directors deck

**Financial Planning and Analyses**

- Budgeting
  - o Produce annual budget
  - o Prepare actual versus budget analyses
- Financial Model
  - o Develop/refine financial model
  - o Review key assumptions to ensure model is reasonable and credible
  - o Establish Key Performance Indicators (KPIs) with management team
  - o Benchmark model metrics to industry and expectations

**Operational Finance**
- Administration / Business Operations
  - o Review insurance, HR, IT, risk management, legal contracts, payroll etc to ensure appropriate and effective
  - o Develop policies where necessary
- Banking
  - o Establish banking relationships
  - o Conform banking and accounting systems
  - o Assist with debt/LoC raise
- Financial Operations
  - o Ensure receivables, payables, payroll etc. are appropriately established and working efficiently
  - o Treasury and cash management

**Legal, Regulatory, HR and other**
- Equity / Capitalization
  - o Manage the Company's capitalization (cap) table
  - o Review stock option documentation and ensure equity incentive plans are appropriate and in place
  - o Coordinate company valuation for 409a purposes
- Investor Relations
  - o Establish investor communications
  - o Create/assist with board of directors deck
- Legal
  - o Review and/or develop appropriate legal documents for business needs
  - o Ensure incorporation documents are appropriate
  - o Coordinate with legal counsel on engagements, contracts and billing
- Personnel
  - o Establish payroll and ensure all payroll and personnel regulatory matters are appropriately dealt with
  - o Develop basic HR guidelines and employee policies
  - o Establish appropriate employee benefits programs

**Sales and Marketing Management**
- Sales and Marketing operations
  - o Ensure sales operations, controls and reporting are in place and effective
  - o Produce activity metrics or other measures of sales productivity
  - o Develop marketing KPIs including ROI

## B.  Project Pricing

The key components of the Project price are based on personnel, hours, and rates as identified below:

| Name | Cost / Week / Staff | Timeline (Weeks) | Total |
|------|---------------------|------------------|-------|
| **Initial Framework / Design** | | | |
| Planning / UX Designer | $3,575.00 | 3 | $10,725.00 |
| Graphic Designer - Iconography | $2,110.00 | 2 | $4,220.00 |
| UI / Dynamic Prototyping | $3,550.00 | 3-5 | $12,425.00 |
| **Engineering** | | | |
| Full Stack [Web] | $3,950.00 | 9 | $35,550.00 |
| Front End [iOS] | $4,120.00 | 8 | $32,960.00 |
| Front End [Android] | $3,900.00 | 7 | $27,300.00 |
| Back End [System Arch] #1 | $4,300.00 | 8 | $34,400.00 |
| Server Side + API Creation | $4,350.00 | 9 | $39,150.00 |
| Front + Back End Integration | $4,150.00 | 8 | $33,200.00 |
| **Marketing / BD** | | | |
| Investments Analyst<br>Pitch deck, mkt research, financials, etc. | $2,260.00 | 5 | $11,300.00 |
| Operations & Revenue<br>Sales plan formation, execution strat | $2,350.00 | 2 | $4,700.00 |
| Operational "Co-Founder"<br>Basic accounting, HR, Risk Mgmt, IT | $1,850.00 | 2 | $3,700.00 |

|  |  |
|--|--|
| Subtotal | **$249,630.00** |
| LB Group Investment | **-$125,000.00** |
| **Total** | **$124,630.00** |

## C.  Billing and Payment

Since Company is receiving an investment from LaunchByte Group LLC, the project funds ($124,630.00) shall be due on signing this Exhibit to secure the Investment and commence work. If Company is raising the project funds from external investors, any and all initial fundraising up to $124,630.00 shall be due directly to Consultant. Company will put their best effort possible forward in closing the aforementioned amount due to Consultant as quickly as possible.

**D. Project Assumptions and Contingencies**

The project assumptions and contingencies that are critical to meeting the project objectives and completing the deliverables in the designated time frame are outlined below:

1. Company will provide access to relevant documents, templates and related material, personnel and other resources necessary for performing the services outlined in this exhibit.
2. Company is responsible for organizational communication of project goals and expectation management. In addition, Company is responsible for providing appropriate points of contact (for problem escalation, reporting etc.) in a timely manner.
3. Company will review and provide feedback on deliverables to Consultant within 5 business days of submission. Consultant assumes a maximum of one round of review by the Company before finalization of the deliverables.
4. If the Company is delayed in responding to Consultant on critical issues or questions that require feedback, or delayed in meeting to review progress, project will be delayed by the number of days that Consultant does not have the required info or the meeting is delayed.
5. Consultant has priced this exhibit on a fixed price basis based on a 6-month elapsed time to produce the required deliverables and has not included any contingency in the pricing provided. Consultant Project Manager will work with the appropriate Company Project Manager to establish project related meeting schedules and identify administrative issues at a kickoff meeting at the start of the project. The Consultant Project Manager will also schedule regular stand ups to get input on the deliverables.
6. The scope, timeline and deliverables of this project will be managed very tightly by the Consultant, so if the total elapsed time exceeds 6 months from the start of the project for reasons beyond Consultant control (change in scope, delays in providing documentation or feedback, etc.), such changes will be handled by written agreement.
7. Company and Consultant will proactively manage the risk arising out of incorrect assumptions related to the delivery of the services outlined in this proposal.
8. The Company's project funds will be allocated first towards the items listed on project pricing table, and then LaunchByte Group's investment will be utilized.
9. In the event that the Company is unable to provide the entire amount at the beginning, the deliverables will be staggered accordingly.

**E. Maintenance & Extension**
  After this Exhibit is fulfilled, Company may work out a monthly maintenance retainer with Consultant for ongoing bug fixes, maintenance, and additional functionality if required. Such services will be performed on a time and material basis at Consultant's then current hourly rates for such services.

IN WITNESS, WHEREOF, the parties have executed this Exhibit to the Consulting Agreement as of the date written below.

**CONSULTANT:**

LaunchByte LLC                          Chef Dazzer, LLC

By: _____          By: _____
Name: Tan Kabra                         Name: Michael Cormier
Title: Manager                          Title: Chief Executive Officer
Date: _____          Date: _____

8