# EXHIBIT D

## PROMISSORY NOTE

Boston, MA
US$ 75,000                                                                                              August 1, 2018

FOR VALUE RECEIVED, the sufficiency and receipt of which is hereby acknowledged, LaunchByte.io LLC (a/k/a The Kabra Group, LLC), with an address of 715 Boylston Street, Boston, MA 02116 (the "Investee"), promises to pay to the order of Jasbir Bhogal, with an address of 327 Commonwealth Avenue Boston, MA 02115 (the "Investor"), or such other place as the Investor may designate in writing, the principal sum of seventy-five thousand (US$75,000) United States Dollars, together with interest as described below, for the purpose of financing the startup.

1. <u>Terms of Payment</u>. This Note shall be due and payable as follows:

1.1 <u>Interest Rate</u>. The interest rate shall be calculated at the rate of eighteen (18%) percent simple interest per the duration of the note. Interest during the note term is a fixed amount of 18% on the amount lent regardless of pre-payment.

1.2 <u>Payment</u>. The principal and interest earned due hereunder ($88,500) shall be payable in one (1) installment six (6) months from the date of this Agreement ("Maturity Date"). If the payment of principal and interest earned of $88,500 is not made on or before the Maturity Date, then interest will continue to run at the rate of twenty (20%) percent per annum until full payment of all principal and interest is made to Investor.

1.3 <u>Prepayment</u>. This Note may at any time, or from time to time, be prepaid in whole or part, without penalty. All payments, including prepayments, shall be applied first to any accrued interest and then to principal. Regardless of prepayment, the amount due under this note is $88,500.00 in principal and interest at anytime prior to or on the Maturity Date.

1.4 <u>Terms of Payment</u>. This Note shall be payable in full upon the Maturity Date.

2. <u>Default</u>. In case of default in the payment required under this Note when due on the Maturity Date, all principal and interest shall become immediately due and collectible at the option of the Investor, and interest shall continue to run at the rate of 20% per annum. Failure to exercise this option in the event of a default shall not constitute a waiver of the right to exercise it in the event of any subsequent default.

3. <u>Guaranty</u>. To induce the Investor to accept this Note, this Note shall be personally guaranteed by Tanmaya Kabra (the "Guarantor"), who runs an early stage venture capital firm located in Boston, MA, the receipt and sufficiency of which is hereby acknowledged. By signing below, the Guarantor unconditionally guarantees the full and timely payment and performance by the Investee of this Note.

3. <u>Miscellaneous</u>.

3.1 The Investee hereby waives presentment for payment, notice of dishonor, protest, notice of protest, and diligence in collection.

3.2 No delay or omission on the part of the Investor in exercising any right hereunder shall operate as a waiver of such right, or of any other right of the Investor; nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or any other right on any future occasion. No single or partial exercise of a power hereunder shall preclude other exercises thereof, or the exercise of any other power hereunder.

3.3 This Note shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts, without giving effect to its conflict of laws principles. The Investee hereby

agrees that any action hereon or relating hereto may be maintained in a court of competent jurisdiction located in the Commonwealth of Massachusetts, and consents to the jurisdiction of any such court for all purposes connected herewith.

3.4  The invalidity of any provision hereof or of any other document relevant hereto shall not affect the enforceability of any other provision. Investee shall deem if the Deliverable is successful.

3.5  Notices hereunder shall be in writing and shall be sent by certified or registered mail, return receipt requested, postage prepaid, addressed to the party to receive such notice at its mailing address first set forth herein. Either party may, by notice given as aforesaid, change its address for all subsequent notices. Notices shall be deemed given when mailed as aforesaid or when received in fact whether or not mailed as aforesaid.

3.6  Investee agrees to pay all costs and expenses, including, without limitation, reasonable attorneys' fees and expenses incurred, or which may be incurred, by Investor for any enforcement and collection of this note.

IN WITNESS WHEREOF, the Investee hereto has executed and delivered this Note to be effective as of the date first set forth above.

Witness: *[signature]*
Margaret McNichols 8/3/2018
Print:

Investee:
LaunchByte.io LLC (a/k/a The Kabra Group, LLC)
By: *[signature]* 8/3/18
Tanmaya Kabra, Manager

Witness: *[signature]*
Margaret McNichols 8/3/2018
Print:

Investor:
Jasbir Bhogal
By: *[signature]* 8/3/18
Name: Jasbir Bhogal

Witness: *[signature]*
Margaret McNichols 8/3/2018
Print:

Guarantor:
Tanmaya Kabra, Individually
By: *[signature]* 8/3/18
Name: Tanmaya Kabra, Individually

**GUARANTY (UNLIMITED)**

In consideration of Jasbir Bhogal with and address of 327 Commonwealth Avenue, Boston, MA 02115 (hereinafter called the "Lender/Investor") extending credit, lending money or otherwise in its discretion giving time, financial or other accommodations to **Launchbyte.io, LLC a/k/a The Kabra Group, LLC**, a Massachusetts limited liability company with its principal office located at 715 Boylston Street, Boston MA 02116 (hereinafter called the "Borrower/Investee"), the undersigned (hereinafter called the "Guarantor") hereby unconditionally guarantees to the Lender that (a) the Borrower will duly and punctually pay or perform, at the place specified therefor, or if no place is specified, at the Lender's address listed herein, all indebtedness, obligations and liabilities, direct or indirect, matured or unmatured, primary or secondary, certain or contingent, of the Borrower to the Lender, now or hereafter owing or incurred (including without limitation costs and expenses incurred by the Lender in attempting to collect or enforce any of the foregoing) which are chargeable to the Borrower either by law or under the terms of the Lender's arrangements with the Borrower accrued in each case to the date of payment hereunder (collectively the "Obligations" and individually an "Obligation"); and (b) if there is an agreement or instrument evidencing or executed and delivered in connection with any Obligation, the Borrower will perform in all other respects strictly in accordance with the terms thereof.

This Guaranty is an absolute, unconditional and continuing guaranty of the full and punctual payment and performance by the Borrower of the Obligations and not of their collectibility only and is in no way conditioned upon any requirement that the Lender first attempt to collect any of the Obligations from the Borrower or any other party primarily or secondarily liable with respect thereto or resort to any security or other means of obtaining payment of any of the Obligations which the Lender now has or may acquire after the date hereof, or upon any other contingency whatsoever.

Upon any default by the Borrower in the full and punctual payment and performance of the Obligations, the liabilities and obligations of the Guarantor hereunder shall, at the option of the Lender, become forthwith due and payable to the Lender without demand or notice of any nature, all of which are expressly waived by the Guarantor. Payments by the Guarantor hereunder may be required by the Lender on any number of occasions.

The Guarantor further agrees, as the principal obligor and not as a guarantor only, to pay to the Lender forthwith upon demand, in funds immediately available to the Lender, all costs and expenses (including court costs and legal expenses) incurred or expended by the Lender in connection with this Guaranty and the enforcement hereof, together with interest on amounts recoverable under this Guaranty from the time such amounts become due until payment at the usual rate charged by the Lender in similar circumstances, but in no event less than 18% per annum.

The liability of the Guarantor hereunder shall be unlimited in amount.

The obligations of the Guarantor under this Guaranty shall continue in full force and effect until the Lender shall have received from the Guarantor written notice of the Guarantor's intention to discontinue this Guaranty, notwithstanding any intermediate or temporary payment or settlement of the whole or any part of the Obligations. No such notice shall affect the liability of the Guarantor hereunder with respect to any Obligations incurred by the Borrower to the Lender or with respect to which the Lender has become committed prior to the receipt of such notice. In the event of any such discontinuance of this Guaranty, all checks, drafts, notes, instruments (negotiable or otherwise) and writings drawn or made by or for the account of the Borrower on the Lender or any of its agents purporting to be dated on or before the date such discontinuance is received by the Lender, although presented to and paid or accepted by the Lender after that date, shall form part of the Obligations. No such notice shall be effective unless received and acknowledged by the Lender at its address.

The Guarantor grants to the Lender, as security for the full and punctual payment and performance of the Guarantor's obligations hereunder, a continuing lien on and security interest in all securities or other property belonging to the Guarantor now or hereafter held by the Lender and in all deposits and other sums credited by or due from the Lender to the Guarantor or subject to withdrawal by the Guarantor; and regardless of the adequacy of any collateral or other means of obtaining repayment of the Obligations, the Lender may at any time and without notice to the Guarantor set off the whole or any portion or portions of any or all such deposits and other sums against amounts payable under this Guaranty, whether or not any other person or persons could also withdraw money therefrom.

The Lender shall be at liberty, without giving notice to or obtaining the assent of the Guarantor and without relieving the Guarantor of any liability hereunder, to deal with the Borrower and with each other party who now is or after the date hereof becomes liable in any manner for any of the Obligations, in such manner as the Lender in its sole discretion deems fit, and to this end the Guarantor gives to the Lender full authority in its sole discretion to do any or all of the following things: (a) extend credit,

1

make loans and afford other financial accommodations to the Borrower at such times, in such amounts and on such terms as the Lender may approve; (b) vary the terms and grant extensions or renewals of any present or future indebtedness or obligation to the Lender of the Borrower or of any such other party; (c) grant time, waivers and other indulgences in respect thereto; (d) vary, exchange, release or discharge, wholly or partially, or delay in or abstain from perfecting and enforcing any security or guaranty or other means of obtaining payment of any of the Obligations which the Lender now has or acquires after the date hereof; (e) accept partial payments from the Borrower or any such other party; (f) release or discharge, wholly or partially, any endorser or guarantor; and (g) compromise or make any settlement or other arrangement with the Borrower or any such other party.

If for any reason the Borrower has no legal existence or is under no legal obligation to discharge any of the Obligations undertaken or purported to be undertaken by it or on its behalf, or if any of the moneys included in the Obligations have become unrecoverable from the Borrower by operation of law or for any other reason, this Guaranty shall nevertheless be binding on the Guarantor to the same extent as if the Guarantor at all times had been the principal debtor on all such Obligations. This Guaranty shall be in addition to any other guaranty or other security for the Obligations, and it shall not be prejudiced or rendered unenforceable by the invalidity of any such other guaranty or security. Notwithstanding any payment by the Borrower to the Lender of the whole or any portion of the Obligations, if the Lender shall be required to pay any amount so paid to the Lender to a Trustee in Bankruptcy of the Borrower, the Guarantor shall remain liable for any sums so paid to said Trustee.

The Guarantor waives notice of acceptance hereof, notice of any action taken or omitted by the Lender in reliance hereon, and any requirement that the Lender be diligent or prompt in making demands hereunder, giving notice of any default or Event of Default (under any instrument, document or agreement executed by the Borrower), by the Borrower or asserting any other right of the Lender hereunder. The Guarantor also irrevocably waives, to the fullest extent permitted by law, all defenses which at any time may be available in respect of the Guarantor's Obligations hereunder by virtue of any homestead exemption, statute of limitations, valuation, stay, moratorium law or other similar law now or hereafter in effect.

So long as any Obligation remains unpaid or undischarged, the Guarantor will not, by paying any sum recoverable hereunder (whether or not demanded by the Lender) or by any means or on any other ground, claim any set-off or counterclaim against the Borrower in respect of any liability of the Guarantor to the Borrower or, in proceedings under the Bankruptcy Code or insolvency proceedings of any nature, prove in competition with the Lender in respect of any payment hereunder or be entitled to have the benefit of any counterclaim or proof of claim or dividend or payment by or on behalf of the Borrower or the benefit of any other security for any Obligation which, now or hereafter, the Lender may have or hold with respect to the Obligations.

Any demand on or notice to the Guarantor shall be in writing and shall be effective when handed to the Guarantor or left at or mailed or sent by telegraph to the Guarantor's usual or last - known address.

No provision of this Guaranty can be changed, waived or discharged except by an instrument in writing signed by the Lender and the Guarantor expressly referring to the provision of this Guaranty to which such instrument relates, and no such waiver shall extend to, affect, or impair any right with respect to any Obligation which is not expressly dealt with therein. No course of dealing or delay or omission on the part of the Lender in exercising any right shall operate as a waiver thereof or otherwise be prejudicial thereto.

This Guaranty is intended to take effect as a sealed instrument to be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts and shall inure to the benefit of the Lender and its successors in title and assigns, and shall be binding on the Guarantor and the Guarantor's heirs, assigns and legal representatives.

IN WITNESS WHEREOF, the Guarantor has executed this Guaranty or has caused this Guaranty to be executed on its behalf by an officer or other person thereunto duly authorized on the 1st day of **August, 2018.**

_____
Tanmaya Kabra, Individually, a Personal Guaranty

Witness: Margaret McNichols  8/3/2018

2