UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA     )
                                    )
        v.                          )
                                    )        Criminal No. 19-10335-DJC
TANMAYA KABRA,               )
                                    )
              Defendant.            )
                                    )
_____)

## GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANT TANMAYA KABRA'S MOTION TO REVOKE ORDER OF DETENTION AND FOR PRETRIAL RELEASE

In response to the Court's Order, the United States respectfully submits this supplemental memorandum in opposition to defendant Tanmaya Kabra's appeal of the Magistrate Judge's Order that he be detained pending trial.

1.      The Court requested additional information concerning how Tanmaya Kabra's status as an Overseas Citizen of India ("OCI") affects his ability to travel internationally.  Based upon discussions with attorneys from the Department of Justice Office of International Affairs ("OIA"), the Government understands that:

- OCI status confers upon its holders the right to freely enter and exit India and to reside there indefinitely;

- An OCI may obtain a replacement document indicating their OCI status at any time through an Indian embassy or consulate, and applications may be submitted online; and

- Travel to and from India requires a valid travel document, such as a passport, in addition to a document indicating an individual's OCI status.

2.      Recent examples from this district make clear that the risk of flight to India is real. In *United States v. Iftikar Ali Ahmed*, 15-cr-10131-NMG, the defendant, Iftikar Ahmed, was arrested on a criminal complaint on April 1, 2015.  Like Kabra, Ahmed is a United States citizen

who had no criminal record and was charged with fraud crimes.  Unlike Kabra—who has no family

and no property in the United States—Ahmed was married, with children, had been employed for

many years by a large and reputable investment firm, and owned millions of dollars' worth of real

estate in this country.  Following his initial appearance, Magistrate Judge Bowler released Ahmed

on conditions that included a $9 million bond, secured by his family home, and the surrender of

his passport.  Shortly after signing an escrow agreement, Ahmed fled the United States to India.

*Id.*  The government believes he entered that country with an invalid Indian passport.  *Id.*  Ahmed

has remained in India since his flight nearly four years ago, despite the government's efforts to

extradite him.

       3.       The government has conferred with OIA about the process of extradition from India

and has learned the following:

- The United States currently has approximately 50 extradition cases pending with India;

- The extradition process can begin only if a fugitive can be located in India, which is often difficult.  Cases can be delayed due to overloaded courts and defense tactics for many years;

- Time frames for extradition can range from five years to 15 or more years; and

- White collar criminals are almost always released on bail.  Occasionally, they disappear during the subsequent court proceedings.

       4.       In addition to the foregoing, the government notes that the following facts, most of

which are undisputed, all support detention based on the risk of flight:

- Kabra is unmarried, has no children, and every member of his immediate and extended family lives abroad in India or Singapore.  Kabra has no relatives in the United States and no relatives have come to the United States since the time of his arrest.

- Kabra has no assets or real estate in the United States.  While his parents own a condominium in New Jersey, and his girlfriend's family owns valuable property in this District, neither have offered *any* meaningful cash or collateral to secure his appearance.

- Kabra is unemployed, has never been gainfully employed, and has no meaningful prospects of employment.  It is unclear how he would support himself if released.  To the extent he was self-employed, his business operated as a Ponzi scheme, and is defunct.

- Kabra has represented that he has $1 million in cryptocurrency—a virtually untraceable financial asset—and offshore accounts in Mauritius, where his father does business.  Despite providing lengthy, detailed declarations concerning his business, he has never provided any explanation regarding the former and has resorted to simply disavowing the latter representation.

- Kabra plainly has access to unexplained sources of money.  Despite the fact that, according to his father, Kabra has more than $1.5 million in outstanding debt, A. Kabra Decl. ¶ 16, Exh. G, Kabra is represented by retained counsel from two separate law firms.

- The case against Kabra is overwhelming.  Numerous investors will testify that he defrauded them, and more have approached the government since the time of his arrest.  He indisputably used investor money to purchase a boat, and repaid investors with money from other investors.

- Despite the extended period of time he had to prepare for his sentencing hearing, and to prepare a bail package, Kabra has offered only a *de minimis* cash bond of $25,000—less than the negative balance in his Santander account on the date of his arrest.

- Kabra faces a Guidelines sentencing range of more than five years in prison upon conviction, based on the loss amount in this case and applicable Guidelines enhancements, and the government is likely to bring additional charges against him.

5.     There are no viable alternatives that would reasonably ensure Kabra's appearance pending trial, and he has not suggested any.  Even electronic monitoring would not ensure his appearance, inasmuch as defendants can—and do—remove monitoring bracelets and disappear.  *See, e.g., United States v. Guerrero*, 17-cr-10388-LTS-2 (defendant who was released on electronic monitoring removed bracelet and has been a fugitive since); *United States v. Letourneau*, 15-CR-10156-DJC (defendant who was released on electronic monitoring with four-third party custodians removed bracelet and was fugitive for 17 months before being apprehended in Colorado).  OIA has advised that defendants on electronic monitoring have removed bracelets (or turned them in prior to surrendering to serve their sentence) and fled to Pakistan and Saudi Arabia.

6.      Magistrate Judge's Bowler cited numerous grounds for detaining Kabra pre-trial, including the weight of the evidence against him, his lack of stable employment, his lack of a stable residence, his lack of financially responsible sureties, his lack of significant community or family ties to this District, and his significant family ties outside the United States.  As she noted in her careful and reasoned Order, his "recent travel includes trips to the United Kingdom, Germany, Portugal, Spain, France, the Netherlands, Russia, United Arab Emirates, Italy, Greece, Switzerland, Africa, Dubai, Indonesia, Thailand, Malaysia, Hong Kong, Mexico, the Dominican Republic and Singapore."  Dkt. 18.  And, she found, "It is clear from the testimony at the detention hearing and the information in the Pretrial Services report that the defendant has family residing overseas and has the birthright to reside in a country outside the United States from which extradition is a lengthy and complex process.  He is very well versed in international travel and has had access to large sums of cash in the past.  He was arrested leaving the country with a substantial tangible asset and leaving extensive debts in Massachusetts as outlined at the detention hearing."  *Id*.  The defendant has failed to provide a basis to revisit any of these findings.

7.      In short, Kabra has lived a considerable portion of his life abroad and his entire family lives overseas.  He plainly has access to financial resources outside the United States and has little, if anything, tying him to this District.  And he faces the likelihood of a significant prison sentence upon conviction.  Under such circumstances, the government respectfully submits that Magistrate Judge Bowler's Order should be affirmed.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:    */s/ Christopher Looney*
CHRISTOPHER LOONEY
Assistant United States Attorney

Dated: September 20, 2019

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Chris Looney*
Christopher Looney
Assistant United States Attorney

Dated: September 20, 2019