**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TANMAYA KABRA,<br><br>Defendant. | Criminal Action No. 1:19-cr-10335-DJC |

## DEFENDANT TANMAYA KABRA'S REPLY BRIEF IN SUPPORT OF MOTION TO MODIFY CONDITIONS OF PRETRIAL RELEASE

On July 2, 2020, Defendant Tanmaya Kabra moved this Court for a minor modification of the conditions of his pretrial release, with support from the Probation Department,[1] who have confirmed in writing to Assistant United States Attorney Looney that Mr. Kabra has had no issues of non-compliance with the existing terms of his pretrial release. *See* Ex. 1 (6.22.20 Ramdehal e-mail). The government concedes that it has no opposition to the 9:00 p.m. to 6:00 a.m. curfew hours to which the Probation Department has given its blessing; it only opposes (1) the additional weekend evening hour that would allow Mr. Kabra to meet with clients of his employer outside of business hours and to walk his service dog when he returns, and (2) the step down to radio frequency (RFD) monitoring.

To be clear, Mr. Kabra does not care about the step-down from GPS to RFD monitoring and requested that change only because he believed that the Probation Department was

---

[1] The Probation Department has given its written support for a modification resetting Ms. Kabra's curfew hours to 9:00 p.m. to 6:00 a.m., 7 days per week, with a step-down from a GPS ankle monitor to a radio frequency (RF) monitor). Mr. Kabra has asked only that the curfew begin one hour later, at 10:00 p.m.

1

affirmatively recommending such a change as part of any modification of his curfew hours. As such, the entirety of the dispute before this Court concerns the single hour of additional time that Mr. Kabra requests.

Despite the parties' near-complete agreement about an appropriate modification of the conditions of Mr. Kabra's pretrial release, the Government apparently felt that its Opposition was an appropriate vehicle to engage in 9 pages of ad hominem attack on Mr. Kabra and his counsel's "candor." The Opposition gratuitously slanders Mr. Kabra, makes false accusations about his compliance with his existing conditions, and offer wild (and untrue) speculation about Mr. Kabra's representations to this Court. As such, Mr. Kabra is compelled to submit this brief Reply, to correct the false record with which the Government transparently has endeavored to prejudice the Court against him. Rather than reiterate the reasons for modifying his pretrial release conditions, this Reply will briefly correct each factual inaccuracy and respond to each inappropriate accusation and speculation in the Government's opposition.

1. <u>Mr. Kabra Has Employment-Based Reasons for Modifying His Release Conditions.</u>

Mr. Kabra's conditions of release currently allow him to be outside of his home (while on GPS monitoring) from 6:00 a.m. to 10:00 p.m. on weekdays and 9:00 a.m. until 5:00 p.m. on weekends. The Government assents to extending the existing weekday hours to weekends, but proposes that his curfew should now end, *on all days*, at 9:00 p.m. The Government acknowledges that Mr. Kabra currently is employed by two companies — ExecuServices, LLC and Frontline Strategy — and correctly notes that he works primarily remotely. The Government has identified no concerns with either form of employment and never has identified any problem with Mr. Kabra working for those entities or working remotely. Rather, the Government appears unable to fathom

how Mr. Kabra's remote working arrangement might require him to work outside of his home after normal business hours. (See Opp. at p. 4)

The Probation Department has confirmed that Mr. Kabra "has been on electronic monitoring for 8 months with no issues of non-compliance." Ex. 1. While Mr. Kabra works primarily from home, he also has been asked to meet with his employers' clients outside of business hours, at dinners, and at social functions. Accordingly, Mr. Kabra has requested the additional hour, which would allow him to continue serving his employers' clients at time of their convenience, and would permit him to return home and walk his service dog, before the curfew commences.

2. The Government's Suggestion that Mr. Kabra Submitted "Fraudulent" Justifications to "Manipulate" the Probation Department is Provably False.

At the request of the Probation Department, Mr. Kabra submitted two letters from medical professionals — Kristen Donovan, R.N., and Kimberly Langdon, M.D. — which discuss reasons that modification of Mr. Kabra's electronic monitoring conditions might be appropriate. Those letters were submitted after the Probation Department gave its support to the modifications at issue on this Motion. They were not submitted in support of the instant request and are not germane to his curfew hours or the GPS/RFD monitoring issue. See Ex. 2 (6.24.20 Ramdehal e-mail).

The Government's Opposition offensively suggests those unrelated submissions "raise serious and substantial concerns," going so far as to claim that the letter from Dr. Kimberly Langdon is "if not outright fraud – part of a disingenuous effort to manipulate the Probation Department into stepping down and eventually removing Mr. Kabra's electronic monitoring." (Opp. at pp. 4-6). The Government's bases for these assertions are its claim that Ms. Donovan's letter is "conclusory" and its inability to contact Dr. Langdon to confirm her authorship of her

3

letter.  Neither assertion is compelling, and the Government fails to disclose its own lack of diligence in investigating its concerns before raising them in an unrelated Opposition.

The Government's position that Ms. Donovan's letter is not sufficiently factually detailed is, charitably, incomplete.  Mr. Kabra submitted letters to the Probation Department, *at their request*, as part of a larger discussion with the Probation Department about his ongoing electronic monitoring.  *See* Ex. 2 (6.24.20 Ramdehal e-mail to Kabra).  The Probation Department did not request or specify any level of detail and Mr. Kabra submitted the letters to identify issues and to continue the ongoing dialogue.  *Id*.  More importantly, the Government fails to disclose that, <u>prior to filing its opposition</u>, it contacted Ms. Donovan about her letter. *See* Ex. 3 (7.16.20 email from K. Donovan to T. Kabra).  The Government does not (nor could it) dispute that Mr. Kabra has been in treatment with Ms. Donovan.  Nor is the nature or extent of that treatment germane to the instant motion.  The Government's claim that Ms. Donovan's letter is "conclusory" when it is not even at issue appears to be part of a thinly veiled attempt to slander Mr. Kabra to this Court.

Similarly, the Government's offensive assertion that Dr. Langdon's letter is a "fraud" could have been disproven had the government conducted even a modicum of investigation.[2]  In fact, after receiving the Government's Opposition, Mr. Kabra's counsel (Mr. Insogna) called Ms. Donovan at a phone number obtained through an open-source (Google) internet search, emailed Ms. Donovan the letter at issue, then spoke with Ms. Donovan and confirmed that the letter submitted to the Probation Department was authored by her at Mr. Kabra's request, was based on her own research and set forth her own medical opinions.  The Government's wild speculation that Ms. Langdon's letter is a "fraud" is simply a further effort to slander Mr. Kabra.

---

[2] Indeed, the Government's leap to the conclusion that there is "fraud" whenever its own deficient investigation fails to uncover important facts has been the driving force of its entire prosecution of Mr. Kabra.  Its knee-jerk assumptions of wrongdoing are not new to the instant Motion.

In addition, the Government's assertion that Mr. Kabra is seeking to "manipulate the Probation Department" is, again, at odds with facts known to the Government (or knowable had they undertaken a modicum of diligence). Not only did Mr. Kabra believe that a "step-down" to RFD monitoring was the Probation Department's preferred approach to modifying his release conditions (*see* Ex. 4 [6.25.20 Ramdehal e-mail]), Mr. Kabra offered the Probation Department with a redundant mechanism for confirming his whereabouts <u>at any time, regardless of his curfew hours</u>. Specifically, as Ms. Ramdehal can confirm, Mr. Kabra has enabled Ms. Ramdehal to access the "Find My Friends" feature on his iPhone, which allows her to identify Mr. Kabra's location at any time. *See* Ex. 5 (Find My Friends Screenshot). And, as set forth above, Mr. Kabra is indifferent to remaining on GPS vs RFD monitoring. The instant motion does not seek to remove electronic monitoring and Mr. Kabra has provided a redundant system with which the Government can monitor his whereabouts at any time.

3. <u>Mr. Kabra Has Had No Instances of Non-Compliance with His Existing Conditions</u>

Finally, the Government's Opposition claims that Mr. Kabra has undertaken actions which "cast doubt on" his compliance with the conditions of his pre-trial release. Here, again, the Government's position is at odds with reality. Not only has the Probation Department confirmed in writing that Mr. Kabra "has had no instances of non-compliance," each issue of purported "concern" raised in the Opposition has been known to the Government for months and has been the subject of discussion between the Government and Mr. Kabra's counsel.

First, the Government and Mr. Kabra's counsel exchanged emails about Mr. Kabra's website and the Seedlink and scholarship initiatives as early as March 2020. After the Government raised a concern, Mr. Kabra explained that the website has existed since before his arrest and pretrial conditions we instated, and that nothing has been done with the website since that time.

Ex. 6 (3.23.20 Kabra emails with Ramdehal).  Those discussions in March and April concluded when the Probation Department issued a straightforward recommendation that Mr. Kabra "hold off any more work on this website/charitable foundations… [or] request permission from the court if you are so inclined."  Ex. 7 (4.23.20 Kabra emails with Ramdehal).  Mr. Kabra responded that same day:

> *I will:*
> - *remove the information blocks from the website and just work with the hospitals in my local area to continue the efforts.*
> - *Hold off on revamping or doing any additional things until the case is resolved.*
>
> *I appreciate the response and understanding.*

*Id*.  The Probation Department responded simply "Thanks, Tan."  *Id*.  The Government has taken no further action or given any indication (prior to its Opposition) that it continued to have any concerns.  Once again, the Government appears to be using an unrelated issue — that Mr. Kabra believed was resolved — simply to attempt to impugn Mr. Kabra's character before the court.

Similarly, the Government has not provided the complete picture to this Court regarding Mr. Kabra's communications with A.M. (a purported "victim" of Mr. Kabra's).  The Government concedes that it was A.M. who contacted Mr. Kabra, not the other way around.  The Government then claims that Mr. Kabra responded inappropriately by commenting on A.M.'s statements to the Government (which Mr. Kabra had recently read, and which he disputes).  Perhaps not surprisingly, the Government fails to append the communication, which shows that that Mr. Kabra appropriately directed A.M. to his attorneys for all future communication.  *See* Ex. 8.  Specifically, Mr. Kabra' response began "Please do not contact me directly" and ended "You can connect with me via counsel. Mark Berthiaume at Greenberg Traurig."[3]  The Government's partial disclosure

---

[3] Subsequent to learning of Mr. Kabra's communication with A.M., the undersigned counsel have also advised Mr. Kabra that, should he receive similar communications from any person connected in any way to his case, he should respond *only* by directing them to contact his attorneys, and not with any commentary about the case.

6

lays bare its intent to impugn Mr. Kabra's character without providing complete information — the full picture is that Mr. Kabra made clear to A.M. that he could not discuss the case with her.

## CONCLUSION

At bottom, the only issue for this Court to resolve is whether Mr. Kabra's curfew should be set at 9:00 p.m. to 6:00 a.m. or from 10:00 p.m. to 6:00 a.m. Rather than confine its Opposition to that issue, the Government has filed an Opposition full of gratuitous (and incompletely investigated) attacks on Mr. Kabra. That Opposition is completely in keeping with the Government's heavy-handed approach to its prosecution of Mr. Kabra. This Court should not condone such tactics and should revise the terms of Mr. Kabra's pretrial release to now require a curfew from 10:00 pm to 6:00 am, 7 days a week.

Dated: July 22, 2020

Respectfully Submitted,

TANMAYA KABRA

By his attorneys

/s/ *Mark A. Berthiaume*
Mark A. Berthiaume (BBO #041715)
E-mail: berthiaumem@gtlaw.com
Nicholas A. Insogna (BBO 568924)
E-mail: insognan@gtlaw.com
Angela C. Bunnell (BBO #690429)
E-mail: bunnella@gtlaw.com
GREENBERG TRAURIG, LLP
One International Place, 20th Floor
Boston, MA 02110
(617) 310-6000
(617) 310-6001 (fax)

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2020, I electronically filed the foregoing document with the United States District Court, District of Massachusetts by via the CM/ECF system. I further certify that on July 22, 2020, I served a copy of the foregoing document on all parties or their counsel.

/s/ Mark A. Berthiaume
Mark A. Berthiaume