**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| vs. | § | |
| | § | |
| TANMAYA KABRA, | § | |
| | § | |
| Defendants | § | Criminal Action No. 19-cr-10335 |
| | § | |
| | § | |
| | § | |

**DEFENDANT TANMAYA KABRA'S RESPONSE TO
PETITION FOR ACTION ON CONDITIONS OF PRETRIAL RELEASE**

NOW COMES Defendant Tanmaya Kabra ("Mr. Kabra") and hereby respectfully moves the court to take no formal action in response to the Petition for Action on Conditions of Pretrial Release submitted by Pretrial Service Officer Erin Hennemann on May 7, 2021 (the "Petition"). In support of this motion, Mr. Kabra states as follows:

**PRETRIAL RELEASE**

Mr. Kabra was released from pre-trial detention on October 3, 2019.  Per Mr. Kabra's Conditions of Release dated October 3, 2019 (the "Conditions of Release"), Mr. Kabra was required to submit to home detention and GPS monitoring. (ECF No. 51)  Since that date, Mr. Kabra has been required to wear an electronic GPS ankle-monitor.

On December 26, 2019, Mr. Kabra filed an Assented to Motion to Modify the Conditions of Release to change from home detention to a curfew condition. (ECF No. 64)  Mr. Kabra made this request in order to accept a position at ExecuServices, Inc. and fulfill the employment condition of his release.  All parties and the Court were aware that the position included

1

meetings with prospective clients outside of normal business hours.  On December 31, 2019, the Court granted the motion and entered an Order imposing a curfew of 10 p.m. to 7:00 a.m. on weekdays, and a curfew of 5:00 p.m. to 9:00 a.m. on weekends ("Curfew Condition"). (ECF No. 65).

On August 4, 2020, after review of the parties' motions and a hearing, the Court entered an Order to modify the Curfew Condition.  The Court modified the hours of Mr. Kabra's Curfew Condition to 9 p.m. through 6 a.m. daily. (ECF Nos. 94, 97, 100, and 106)  For approximately the past 18 months, Mr. Kabra has adhered to the Conditions of Release, including employment, GPS monitoring, and the Curfew Condition without incident.

## PETITION FOR ACTION ON CONDITIONS OF PRETRIAL RELEASE

On May 7, 2021, Probation Officer Erin Hennemann ("Officer Hennemann") filed the Petition.  Officer Hennemann requested that the Court schedule a Show Cause Hearing to "further address Mr. Kabra's violations of bail supervision and the location monitoring program."  Petition, p. 3.  On May 7, 2021, the Court scheduled a Show Cause Hearing for May 19, 2021.  (ECF No. 144).

## APRIL 9, 2021 VIOLATION

In support of his request that no formal action be taken in response to the Petition, Mr. Kabra offers background information and additional information regarding the violations listed in the Petition.  With respect to the April 9, 2021 violation, the Petition states that "Mr. Kabra was observed via gps points to be at a restaurant past his curfew time."  Petition, p. 2.  At the time, Pretrial Service notified the Court of the violation and requested that no formal action be taken. *Id.*  The Court agreed and adopted the recommendation.  *Id.*

2

Mr. Kabra respectfully states that this violation is not grounds for a change in his conditions of release. On the evening of April 9, 2021, Mr. Kabra had a business meeting scheduled at a restaurant located in Hingham, Massachusetts. Mr. Kabra scheduled the meeting at 6:15 p.m. and planned to meet with the individual for about 90 minutes. He intentionally selected the time of the meeting to afford ample time for him to return home by his 9 p.m. curfew.

Mr. Kabra arrived at the selected restaurant early. Upon his arrival, he received a text message from the individual he was meeting stating that she was running late. **Exhibit A-1.** She got on a later ferry than originally planned from Martha's Vineyard. **Exhibit A-1.** The individual was already in route. Mr. Kabra looked up the travel time to his home based on the new estimated departure time (estimating 90 minutes after the time of her arrival), taking into account Friday evening traffic patterns, and decided he still would be able to make it home by his 9 p.m. curfew.

Despite Mr. Kabra's best efforts and diligent planning, the meeting ran late and he did not leave the restaurant until 9 p.m. Upon leaving, Mr. Kabra immediately called Officer Hennemann and left her a voice message explaining that his business-related meeting ran late and he would arrive home after his curfew.

On his drive home, Mr. Kabra's car began to shake. Mr. Kabra pulled to the side of the road and texted Officer Hennemann to inform her that he would arrive home even later than he previously advised her. **Exhibit A-2**. Mr. Kabra waited for a period before re-starting his car. It started and he drove home slowly, thinking the engine might fail. Upon arriving home around 10 p.m., Mr. Kabra texted Officer Hennemann to let her know he was home. **Exhibit A-2.** Officer Hennemann informed Mr. Kabra the next day that he needed to be careful not to have future

violations.  This violation is not of the nature that warrants a change to Mr. Kabra's conditions of release, as reflected by Probation's recommendation that no formal action be taken as a result. Petition, p. 2.

## APRIL 24, 2021 VIOLATION

The second violation cited in the Petition occurred on April 24, 2021.  The petition states that "Mr. Kabra was out of range from his location monitoring device and his residence from 2:59 AM – 3:33 AM.  According to GPS mapping, Mr. Kabra drove up 93 North and back to his residence during that time."  Petition, p. 2.

On April 23, 2021, Mr. Kabra met with some friends after work.  He left the group and arrived home well before his 9 p.m. curfew.  Between 2:00 and 3:00 a.m., Mr. Kabra received a series of calls from one of the friends he met after work.  She was in a frantic state because one of their mutual friends was in need of help.  **Exhibit A-3.**

Mr. Kabra was informed that a friend's car had broken down on the side of I-93 North two exits from Mr. Kabra's home.  The car owner had no emergency flares or other means of warning oncoming drivers.  The car owner had been consuming alcohol earlier that evening, although Mr. Kabra was not certain of the amount.  The car owner's phone was almost out of battery power and was rapidly draining as he sought to get in touch with AAA.  **Exhibit A-4.** The car owner was contemplating running across eight lanes of highway to get to a gas station in the middle of Malden/Revere.  The friend reported that he narrowly avoided being hit by a reckless driver who was swerving and apparently did not see the car stalled on the side of the highway with no lights.  Mr. Kabra felt his friend was not making sensible decisions and that his predicament left him vulnerable to a serious accident from oncoming highway traffic.

4

Mr. Kabra sent an email to Officer Hennemann prior to leaving his home informing her of the situation. **Exhibit A-5**. Mr. Kabra drove to meet his friend on I-93 North and assisted in contacting AAA to have the car towed. Once the car was towed, Mr. Kabra and his friend returned to Kabra's apartment. **Exhibit A-4.** Mr. Kabra was away from his apartment for less than an hour. Petition, p. 2 (he was out of range from 2:59 a.m. to 3:33 a.m.).

The next morning, Kabra contacted Officer Hennemann to follow up on his earlier email to ensure she understood why the bracelet may have alerted her that he was out of range for a short period of time. **Exhibit A-6**. Mr. Kabra's violation is not a reflection of cavalier disregard for the conditions of his release. Rather, the incident reflects Mr. Kabra's compassionate response to exigent circumstances where he felt the risk of imminent harm to a friend without other options for assistance would excuse his brief departure from his apartment. Mr. Kabra took contemporaneous steps to keep his probation officer informed of his actions.

Aside from these two incidents, Kabra has diligently followed his conditions for over a year and a half. It is respectfully submitted that there is not good cause to modify Mr. Kabra's conditions of release.

<u>**CONCLUSION**</u>

For the foregoing reasons, Mr. Kabra respectfully moves the Court to take no formal action as a result of the aforementioned violations.

Respectfully submitted,

TANMAYA KABRA

By his attorneys,

/s/ *Michael J. Connolly*
Michael J. Connolly, BBO#638611
Julianna Malogolowkin, BBO#693320

5

HINCKLEY, ALLEN & SNYDER LLP
28 State Street
Boston, MA 02109
mconnolly@hinckleyallen.com
jmalogolowkin@hinckleyallen.com
Tel. (617) 345-9000
Fax (617) 345-9020

Dated: May 18, 2021

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document filed through the ECF system will be sent electronically by the ECF system to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 18, 2021.

/s/ *Michael J. Connolly*
Michael J. Connolly

## Exhibit A-1





To: Alicia Intro from Joanna

I really don't know what happened tbh I'm so sorry

It's okay!

I'll have my office call and move it

I'm literally on time for everything or early so I'm like super embarrassed

Sorry

You're okay don't worry, it happens

**Exhibit A-2**



**Exhibit A-3**



**<u>Exhibit A-4</u>**

**Malogolowkin, Julianna**

---

**Subject:**                              FW: Re: Letter for Violation


---------- Forwarded message ----------
From: Rasheed Adigun <rasheed.adigun617@gmail.com>
Date: Tuesday, May 11 2021 at 5:24 PM EDT
Subject: Re: Letter for Violation
To: Tan Kabra <tk@tkabra.com>

To whom it may concern,

On the night of May 1st I experienced some car trouble and was left stranded on the side of the highway between exit 32 and 33. The time was approximately 2:30 am my phone at the time on low battery and resources to get home were becoming increasingly daunting. The only person that I knew who was close enough to my location was my good friend Tan. What he did for me that night was very unselfish and caring as he helped me tow my car, pick me up and provide a place to stay for the night until I was able to get my car situated the next day. Tan is a very empathetic and compassionate person and would do anything necessary to make sure the people he knows are safe and I am very grateful for that

let me know if this something that would benefit your case

**Exhibit A-5**

 **Gmail**

**Tan Kabra <tk@tkabra.com>**

## Helping
4 messages

---

**Tan Kabra** <tk@tkabra.com>
To: Erin Hennemann <erin_hennemann@map.uscourts.gov>

Sat, Apr 24, 2021 at 2:38 AM

Hi Erin,

The last time I texted you in the middle of the night, you couldn't sleep for a while so I'm sending you an SMS hoping that it will be OK. My friend was driving back to his home in the north shore and got into a small fender bender it seems just one exit away from me on 93 north. His phone is on 1% and called me freaking out and I told him that I couldn't leave but he's on the side of the highway with no battery and/or means to get anywhere right now. I have to help my friend out and I'm sure you can appreciate that so I'm going to take 10 minutes to go there and come right back. You can watch my location and I've also added a screenshot of where he has broken down.



Thanks

Thanks,

**Tan Kabra**
*M:* +1.978.998.2449
[www.tkabra.com](www.tkabra.com)

---

**Tan Kabra** <tk@tkabra.com>                                    Sat, Apr 24, 2021 at 3:01 AM
To: Erin Hennemann <erin_hennemann@map.uscourts.gov>

Here is some video proving it - and also reporting that I had contact with 911 (state police & Medford police) to help him tow / get it off the road (since his phone was dead)

Thanks,

**Tan Kabra**
*M: +1.978.998.2449*
*www.tkabra.com*
[Quoted text hidden]

---

📄 **recorded-236766173335.mp4**
4223K

---

**Tan Kabra** <tk@tkabra.com>                                                                    Sat, Apr 24, 2021 at 3:20 AM
To: Erin Hennemann <erin_hennemann@map.uscourts.gov>





Thanks,

**Tan Kabra**
*M:* *+1.978.998.2449*
*www.tkabra.com*
[Quoted text hidden]

### Exhibit A-6



To: Erin Pre Trial

Sat, Apr 24, 9:39 AM

Good morning Erin. I sent you an email last night so that I didn't wake you up

I saw that. Bottom line is that was someone else's emergency and you could've called police for them from your house so this is concerning. Give me a call on Monday to discuss further.

I didn't think about that, nor did I know of the full situation. I also didn't know the state / condition of this friend. I took an executive decision to help someone and called the police as soon as I got there

I alerted my attorneys to the matter and forwarded them my thread. I'd like to have them write something